# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CLEAVEN L. WILLIAMS, JR. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. CCB-10-935 |
| ASSISTANT WARDEN BARTEE, *et al*. | * | |
| Defendants | * | |
| | *** | |

## **MEMORANDUM**

Pending is defendants' motion to dismiss or for summary judgment. ECF No. 18. Plaintiff opposes the motion. ECF No. 27. Also pending is plaintiff's motion for summary judgment. ECF No. 29. Upon review of the papers filed, the court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, defendants' motion shall be granted in part and plaintiff's motion shall be denied.

## Background

The plaintiff, Cleaven Williams, who is representing himself, raises five claims in his amended complaint concerning the conditions of his pretrial detention in the Baltimore City Detention Center (BCDC). ECF No. 7.[1] First he claims he had a toothache that he first reported on January 5, 2010, but was not seen until March 10, 2010. Plaintiff alleges that Sergeant Williams, Officer Laryea and Officer Saunders interfered with his scheduled appointments to see the dentist and it was not until a mental health official named Drake intervened on his behalf that he was able to keep his appointment. *Id*. at p. 10. Plaintiff claims dental staff told him that he

---

[1] Plaintiff's initial pleading, construed as a civil rights complaint, mostly concerned his ideas on how the BCDC could be run more efficiently and safely. *See* ECF No. 1. Because plaintiff mentioned he had been assaulted and attempted to draw a nexus between his situation and that of another detainee who was assaulted as a result of staff misconduct, the case was permitted to go forward on the condition that plaintiff amend his complaint. *See* ECF No. 2.

was scheduled to see the dentist on several occasions but security staff on "A shift" failed to bring him to his appointments.

The second claim concerns an assault on plaintiff which allegedly took place on April 24, 2009.[2] He states his tier was supervised by Officer Young, a female officer. She opened his cell door in the evening to allow him to take a shower. He states there were three or four inmates out on the tier when he left his cell and he "engaged in an argument" with three of them, while walking to the shower area. Plaintiff finished taking his shower and shortly after he turned off the water, Young yelled "shower's over." Moments later plaintiff was attacked by two assailants, one of whom was armed with a knife. Once he made his way back to the tier, plaintiff claims two more inmates joined the attack against him and Young simply watched the attack and did not do anything to stop it. Plaintiff claims his assailants were members of the Bloods and that Young knew he would be harmed if she did nothing to stop the assault.

The third count of the amended complaint alleges that plaintiff was forced to undergo surgery at the University of Maryland, Shock Trauma Unit for treatment of the stab wounds he suffered in the assault. Plaintiff states he made it clear he did not want surgery, but "Dr. Joe Doe" told him he had no right to refuse the surgery and that the warden told them to keep Plaintiff alive by all means necessary. Plaintiff does not specify what type of surgery was involved, nor does he describe the injury suffered as a result.

In the fourth count plaintiff claims he was committed to the psychiatric ward on December 20, 2008, during which time Nurse Maria Johnson withheld food from him for three or four days. He also states that when he was allowed to eat, Johnson would not allow others to give him extra food. In addition, he claims his mail was withheld, he was injected with thorazine causing him to lose consciousness two or three times, and he was denied showers for the first

---

[2] Plaintiff later asserts the assault occurred on April 24, 2010.

two weeks. Finally, he claims Johnson committed him to the crisis management room for purposes of preventing him from receiving a visit from his father, who lives out of town.

In the fifth count plaintiff alleges that Florence Foster and Nat Coley intentionally work to deny, deter, and delay completion of the grievance process. This allegation mirrors statements made by plaintiff in his initial papers stating that grievances are not properly investigated and frequently involve non-private interviews with victims of assault who are reluctant to speak for fear their assailants will hear them. ECF No. 1 at p. 3. Plaintiff states that Foster and Coley sabotaged his efforts to address his claims through the grievance process by providing unacceptable responses to his grievances.

Defendants assert that plaintiff has failed to properly exhaust administrative remedies with respect to the first, second, third and fifth claims in the amended complaint. The fourth claim concerns allegations against non-state employees and is not addressed. Defendants further assert that apart from the failure to exhaust, the complaint fails to state a claim upon which relief may be granted, and they are entitled to qualified immunity. ECF No. 18.

**Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

I. <u>Exhaustion of Administrative Remedies</u>

The PLRA provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though

the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 88. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528, 530-32 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id*. at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to

exhaust where he "never sought intermediate or full administrative review after the prison authority denied relief"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

The grievance procedure in place at BCDC requires completion of a four-step grievance process. ECF No. 18 at Ex. A, ¶3. A Step I grievance must be filed within 15 days of the incident addressed with the Resident Grievance Office Coordinator who makes an initial determination of merit or no merit. A Step II grievance must be filed within 10 days of the Coordinator's decision and is heard by the Resident Grievance Hearing Board. Step III grievances must be filed within 10 days of the Hearing Board's decision and is considered by the Warden. The final appeal, Step IV, must be filed within 10 days of the Warden's decision and is considered by the Commissioner of the Division of Pretrial Detention and Services. *Id*. Defendants claim that plaintiff did not comply with these grievance procedures.

With respect to plaintiff's claim about not being taken to his dental appointments by Williams, Laryea, and Saunders, plaintiff filed a Step I and a Step II grievance. Defendants assert he did not file a Step III or IV grievance. ECF No. 18 at p. 15. Plaintiff asserts he did in fact file grievances for Step III and IV, but defendants' record keeping has caused his paperwork to be misplaced or otherwise unavailable to defendants. ECF No. 27 at p. 10. A copy of the Step III grievance,[3] together with the decision rendered by the Warden's office, is attached to plaintiff's response. ECF No. 27 at Att. 1, pp. 8-9. He asserts that although the date indicated on the response is June 30, 2010, he did not actually receive it until July 11, 2010. *Id*. The Step III grievance was dismissed as being untimely. *Id*. at p. 9. The grievance form indicates that it was

---

[3] The grievance states that plaintiff never received an acceptable response to his Step II grievance concerning his missed dental appointments. ECF No. 27 at Att. 1, p. 8.

a "resubmi[ssion]" and plaintiff states he filed the grievance three times. ECF No. 27 at p. 11 and Att. 1 at p. 8. The Step IV grievance filed by plaintiff concerns the dismissal of his Step III grievance as untimely, and he claims there was never a response received regarding that grievance. ECF No. 27 at p. 11 and Att. 1 at p. 10. The court finds there is sufficient evidence to raise a genuine dispute of material fact regarding exhaustion of the grievance process with respect to this claim. The merits of the claim will, therefore, be addressed.

With respect to plaintiff's claim concerning the assault he suffered and his allegation that Officer Young improperly failed to intervene or encouraged the assault to take place, defendants maintain that the grievances filed regarding this matter concerned issues that were "not grievable" due to the outcome he was seeking. ECF No. 18 at Ex. A, p. 2. Plaintiff was seeking to have Young removed from her job, and a formal written acknowledgment and apology from the administration. *Id*. After plaintiff's Step I and II grievances were dismissed, he had the opportunity to file a Step III grievance within ten days of July 28, 2009, but did not do so. *Id*. Rather, plaintiff filed another Step II grievance on December 13, 2009, regarding the same matter. *Id*. at p. 3. Since the assault occurred in April 2009, the grievance was dismissed as untimely. A subsequently filed Step IV grievance was also dismissed as untimely. *Id*. Plaintiff does not dispute that he failed to comply with the procedures. ECF No. 27 at p. 11. He claims defendant Coley "previously stated that [his] grievance had 'no merit' which strongly indicates, the IGO wasn't going to do anything for the plaintiff, towards the results plaintiff desired anyway." *Id*. Plaintiff's explanation for failing to follow through with the grievance procedure does not suffice to excuse exhaustion. *See Booth*, 532 U.S. at 741 (requiring exhaustion even where relief sought is unavailable). The claim concerning the assault and Young's alleged participation has not been properly exhausted and must be dismissed.

Defendants allege plaintiff's claim regarding Warden Merritt and Assistant Warden Bartee authorizing surgery without plaintiff's consent after he was stabbed was never addressed in a grievance. ECF No. 18 at p. 17. Plaintiff responds that he did file a Step I grievance concerning this claim, but admits he did not complete the grievance procedure due to his ignorance of the process at the time. ECF No. 27 at p. 12. Plaintiff requests that he be allowed to exhaust administrative remedies with respect to this claim. The exhaustion requirement, however, constrains this court to dismiss claims that have not been exhausted. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Defendants also assert that plaintiff failed to exhaust the grievance process with respect to his fifth claim regarding Foster and Coley intentionally working to deny, deter, and delay his use of the grievance process. ECF No. 18 at p. 18. In response to this assertion, plaintiff claims he did not have access to the forms needed to file grievances and he points to his efforts to communicate via letter his dissatisfaction with the grievance process to Foster. ECF No. 27 at p. 13. Plaintiff also claims that defendants have not complied with applicable procedures or time constraints and if they are not held accountable the grievance process is meaningless. He claims the rules governing the procedures are not well-publicized within BCDC and that the inmate handbook does not specify the filing deadlines. *Id*. at 13-14. Whether plaintiff had a meaningful opportunity to exhaust available remedies with respect to this claim cannot be determined on this record; thus, the merits of this claim will be considered.

II.   Constitutional Claims

The plaintiff challenges conditions during his pretrial detention in the BCDC. The Due Process Clause of the Fourteenth Amendment provides that pretrial detainees may not be subjected to "conditions [that] amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Conditions amount to punishment when they are "imposed with an expressed intent to punish" or are "not reasonably related to a legitimate nonpunitive governmental objective." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988); *see also United States v. Hall*, 551 F.3d 257, 273 n.19 (4th Cir. 2009) (explaining that, whereas conditions-of-confinement claims by convicted prisoners are governed by the Eighth Amendment, such claims by pretrial detainees are governed by the Due Process Clause).

A.   Psychiatric Ward Claim

Plaintiff has abandoned his claim regarding his commitment to a psychiatric ward[4] where he was allegedly deprived of food and showers. Moreover, the claim is asserted against non-state employees and will be dismissed without prejudice.

B.   Denial of Dental Appointments Claim

In order for a prisoner or a pretrial detainee to state a constitutional claim for denial of medical care, he must demonstrate that the actions of the defendants or their failure to act amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Martin*, 849 F.2d at 871 (adopting the *Estelle* framework for claims by pretrial detainees concerning denial of medical care because, although *Estelle* was an Eighth Amendment case, "no legitimate nonpunitive goal is served by a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent"). Deliberate

---

[4] The court notes the claim lacks a number of details and, if not abandoned by plaintiff, would be subject to dismissal under Fed. R. Civ. Proc. 8(a) as it does not provide enough information to enable a defendant to defend the claim.

indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001) (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

At issue in the instant case is the failure by correctional staff to escort plaintiff to scheduled dental appointments on seven different occasions. Plaintiff alleges the failure to take him to his appointments was a deliberate attempt to inflict pain on him; defendants have not addressed that allegation and have provided no other explanation for the delay in providing plaintiff with the care required. The court finds a genuine dispute of material fact concerning

what defendants Williams, Laryea, and Saunders knew about plaintiff's dental pain and their motivations, if any, for failing to take him to his dental appointments. Defendants will be directed to supplement their motion for summary judgment with affidavits and other evidence concerning this claim. Plaintiff will be permitted to file a response thereto.

A separate order follows.

March 28, 2011 /s/
Date Catherine C. Blake
United States District Judge